UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>SAHARA SUNRISE HOMEOWNERS ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:16-CV-731 JCM (PAL)<br><br>ORDER |

Presently before the court is Absolute Collection Services, LLC's ("ACS") motion to dismiss Luz Stella Ramirez-Salgado's ("Ramirez") counterclaim. (ECF No. 25). Ramirez filed a response (ECF No. 26), and ACS filed a reply (ECF No. 27).

Also before the court is plaintiff Bank of New York Mellon's (the "Bank") motion for summary judgment.[1] (ECF No. 28). Ramirez joined in this motion. (ECF No. 30). Defendant Sahara Sunrise Homeowners Association (the "HOA") filed a limited response. (ECF No. 29). The HOA later filed a supplement without leave, and that supplement will be stricken. (ECF No. 31); *see also* LR 7-2(g). The Bank thereafter filed a reply. (ECF No. 32).

**I.     Introduction**

This action involves the nonjudicial foreclosure sale of the real property at 6525 Blooming Sun Court, Las Vegas, Nevada 89142 (the "property"). (ECF No. 1).

On August 10, 2011, ACS recorded a notice of delinquent assessment lien on the property on behalf of the HOA, listing a sum due of $895.18. (ECF No. 28-3).

---

[1] The Bank appears as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2005-7CB, Mortgage Pass-Through Certificates, Series 2005-7CB. (ECF No. 1).

**James C. Mahan**
**U.S. District Judge**

On June 27, 2012, ACS recorded a notice of default and election to sell under the HOA lien, listing a sum due of $1,959.60. (ECF No. 28-5).

On July 6, 2012, ACS recorded another notice of default and election to sell, which identified an amount due of $2,051.63. (ECF No. 28-6). On October 15, 2012, ACS recorded a notice of trustee's sale, showing an amount due of $3,876.13. (ECF No. 28-7).

Finally, on March 19, 2013, ACS recorded a trustee's deed upon sale regarding the underlying property, identifying Auction Real Estate Services, LLC as the purchaser. (ECF No. 28-9).

The Bank asserts the following claims: (1) declaratory judgment for quiet title against all defendants; (2) breach of Nevada Revised Statutes ("NRS") § 116.1113 against the HOA and ACS; (3) wrongful foreclosure against the same; (4) injunctive relief against Ramirez; and (5) deceptive trade practices against the HOA and ACS. (ECF No. 1).

On August 19, 2016, Ramirez filed an answer and crossclaim, requesting that the court quiet title to the property in her favor. (ECF No. 20).

**II.     Legal Standard**

*a. Motion to dismiss*

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent

**James C. Mahan**
**U.S. District Judge**

with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### b. Motion for summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

James C. Mahan
U.S. District Judge

1  In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

. . .

**James C. Mahan**
**U.S. District Judge**

### III. Discussion

#### a. ACS's motion to dismiss (ECF No. 25)

ACS argues that Ramirez's counterclaim should be dismissed because: (1) ACS had no interaction with Ramirez because Auction Real Estate Services, LLC—not ACS—was the entity that sold the property to the counterclaimant; and (2) Ramirez purchased the property via quitclaim deed "and therefore bought any right to the land that the previous title holder had." (ECF No. 25 at 4).

This court has reasoned that parties facing a quiet title claim may be, at least nominally, necessary parties when the court's potential invalidation of the foreclosure sale could alter their possible liability to other entities in the case. *See Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n*, No. 2:15-cv-1683-JCM-CWH, 2017 WL 843177, at *6 (D. Nev. Mar. 1, 2017); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (considering the desire to avoid redundant litigation and specifying Federal Rule of Civil Procedure Rule 19(a)(1)'s focus on allowing "meaningful relief").

Upon review of the underlying complaint in this case, the court notes that ACS allegedly conducted the recordation of the various liabilities due on the HOA lien for the property. (ECF No. 1). Additionally, ACS admits that it was involved in the foreclosure process here, stating "The Property was foreclosed on by the HOA, Sahara Sunrise Homeowners Association, through ACS, and was sold to Auction Real Estate Services, LLC." (ECF No. 27 at 2). Therefore, there is some possibility that ACS could be liable to other parties in this action—or Ramirez might be able to assert a colorable claim against an instant party—depending on the sufficiency of ACS's recording/servicing efforts. Thus, this motion will be denied.

#### b. The Bank's motion for summary judgment (ECF No. 28)

##### i. Injunction claim

As an initial matter, the court dismisses, without prejudice, claim four because the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-cv-346-JCM-RJJ, 2012 WL

1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

>  *ii. Plaintiff's NRS 116.1113 and wrongful foreclosure claims*

Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev. Rev. Stat. § 38.330(1). However, while NRS 38.330(1) explains the procedure for mediation, NRS 38.310 is clear that no civil action may be commenced "unless the action has been submitted to mediation." NRS 38.310. Specifically, NRS 38.330(1) offers in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation. **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

Nev. Rev. Stat. § 38.330(1) (emphasis added). Moreover, nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time.

Next, under NRS 38.300(3), a civil action includes "an action for money damages or equitable relief," but not "an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property." Accordingly, violation of NRS 116.1113 is a "civil action[] as defined in NRS 38.300." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 558 (Nev. 2013) (finding that a claim for violation of NRS 116.1113 was properly dismissed for lack of compliance with NRS 38.310).

Further, "[a] wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12–cv–1367–JCM–PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to

residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558. Therefore, plaintiff's claim of wrongful foreclosure must be mediated before this court may delve into its merits.

Upon review of the record, plaintiff has not submitted proof that it has accomplished NRED mediation for the NRS 116.1113 and wrongful foreclosure claims. In sum, those claims will be dismissed as unexhausted for failure to mediate.

### iii. Deceptive trade practices

In its complaint, the Bank also alleges a claim for deceptive trade practices against the HOA and ACS. (ECF No. 1). The Bank alleges that the HOA and ACS falsely represented the superpriority amount in the recorded notices, as well as pertinent information in the recorded trustee's deed upon sale, in violation of NRS 598.0915(15), 598.092(8), and 598.0923. (*Id.* at 14–15).

Subsection (15) of NRS 598.0915 and subsection (8) of NRS 598.092 define deceptive trade practice as, when a person, in the course of his or her business or occupation: "[k]nowingly makes [a] false representation in a transaction," "[k]nowingly misrepresents the legal rights, obligations or remedies of a party to a transaction," or "[u]ses coercion, duress or intimidation in a transaction." *See* Nev. Rev. Stat. §§ 598.0915(15), 598.092(8); *see also* Nev. Rev. Stat. § 598.0923 (providing additional fraud-related definitions). The Ninth Circuit has held that allegations of fraud must be pled with particularity as to the "time, place, and content of an alleged misrepresentation." *Yourish v. Cal. Amplifier,* 191 F.3d 939, 993 (9th Cir. 1999); *see also* Fed. R. Civ. P. 9(b).

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  (citations omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* (citations omitted).

Here, the Bank's amended complaint has failed to plead its deceptive trade practices claim against the HOA and ACS with the requisite particularity. More specifically, the Bank fails to set forth sufficient facts detailing how the HOA and ACS falsely represented the amounts due in the recorded notices or otherwise. In fact, the Bank's allegations under the deceptive trade practices portion of the amended complaint contradict the general allegations—specifically, the Bank alleges under the deceptive trade practices section that the HOA and ACS falsely represented the superpriority amounts in the recorded notices. *See* (ECF No. 1 at 14–15). However, the general allegations state that the HOA and ACS failed to specify the superpriority portion in the recorded notices. *See* (*id.* at 5–6).

Accordingly, the court will dismiss the Bank's deceptive trade practices claim without prejudice.

### iv. Quiet title

The court now considers plaintiff's lone remaining claim of quiet title. Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it must show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

*1. Tender*

Plaintiff argues that its efforts to tender payment to satisfy the super-priority lien on the property were sufficient to "preserve[] the seniority of its deed of trust." (ECF No. 28 at 9). Plaintiff is incorrect.

The Bank blames ACS for the failure to tender, stating that it would provide tender, upon the condition that the HOA would provide proof of a sum, although full outstanding amounts were listed in the HOA's recorded liens on the property and those filings provided sufficient information to provide an avenue to stop the foreclosure sale. (*Id.*); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).[2]

Indeed, ACS thereafter responded in kind, stating that it would not provide the "9 month Statement of Account" until the Bank satisfied a condition of its own, the presentation of a "Trustees Deed Upon Sale." (ECF No. 28 at 4). Here, the Bank has not provided legal argument as to why its conditional treatment of payment is less injurious or improper than that of ACS, particularly when the Bank had other ways to ensure the satisfaction of the super-priority lien.

The Bank also asserts that *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 69 (Nev. 2016), indicates the super-priority lien value to be "nine months of common assessments and not a penny more." (ECF No. 28 at 9–10). The Bank misreads *Ikon Holdings*; indeed, the Nevada Supreme Court has maintained a broader definition of the super-priority lien than that articulated by the Bank. *See Ikon Holdings*, 373 P.3d at 69 n.5 ("Pursuant to NRS 116.310312(4), 'maintenance or abatement' costs include 'reasonable inspection fees, notification and collection

---

[2] This reasoning also invalidates the Bank's argument that the refusal to accept tender violates the Bank's due process rights. The Bank's own discussion of *SFR Investments* acknowledges that it could have alternatively "determin[ed] the precise superpriority amount in advance of the sale or pa[id] the entire amount and request[ed] a refund of the balance." (ECF No. 28) (quoting *SFR Invs.*, 334 P.3d at 417–418).

James C. Mahan
U.S. District Judge

- 9 -

costs and interest.'"); *see also Deutsche Bank Nat'l Trust Co. v. Talasera & Vicanto Homeowners' Ass'n*, No. 2:15-cv-01139-JCM-PAL, 2017 WL 736879, at *9 (D. Nev. Feb. 24, 2017) (distinguishing between the present argument and *Ikon Holdings*).

In sum, the Bank's argument regarding tender is unpersuasive.[3]

### 2. *Applicability of NRS Chapter 116*

The Bank also argues that NRS Chapter 116 violates due process and that actual notice of an impending foreclosure sale is irrelevant because the Ninth Circuit, in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"), invalidated NRS chapter 116. (ECF No. 28).

However, the Ninth Circuit actually held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue in that case was the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The Bank has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, the Bank fails on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

---

[3] Notably, a case to which the Bank heavily cites has since been vacated and remanded on other grounds. *See Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 391 P.3d 760 (Nev. 2016).

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. In fact, the Bank acknowledges having received the notice of default. (ECF No. 28-8 at 5) ("This letter is in response to your Notice of Default with regard to the HOA assessments purportedly owed on the above described real property . . . ."). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put the Bank on notice that its interest was subject to pendency of action and offered all of the required information. *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity."). Further, the Bank does not dispute receiving actual notice of the foreclosure sale, but merely argues that "actual notice does not change the analysis." (ECF No. 28 at 9).

### 3. Commercial unreasonability

Now, after failing to use the legal remedies available to it to prevent the property from being sold to a third party—for example, seeking a temporary restraining order, a preliminary injunction, and filing a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—the Bank seeks to profit from its own failure to follow the rules set forth in the statutes by invoking equitable relief. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

While this court will analyze the Bank's equitable arguments under quiet title, this court notes that the failure to utilize legal remedies, as set forth above, makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*,

646 P.2d 549, 551 (1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

Here, the Bank contends that the foreclosure is invalid also because it was commercially unreasonable. (ECF No. 28 at 15). In particular, it asserts that the property sold at the foreclosure sale "for less than 10% of its fair market value." (*Id.*).

In *Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty Bancorp.*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price *and* "fraud, unfairness, or oppression." 366 P.3d 1105, 1110 (Nev. 2016); *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Shadow Wood*, 366 P.3d at 1112; *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

Accordingly, the Bank fails on its unfairness argument.[4] Although the Bank argues that the "CC&Rs contain a provision that expressly represents that the lien of assessments is inferior and subordinate to the lien of a first mortgage or first deed of trust," this court has previously distinguished *ZYZZX2 v. Dizon*, No. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), from facts highly similar to those presented here. (ECF No. 28 at 16); *see also Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 2:14-cv-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the legal impact of NRS 116.1104 on declarations regarding lien priority made in CC&Rs and noting that the HOA in ZYZZX2 also sent out misleading mailings). Thus, the Bank's argument based on ZYZZX2 is unpersuasive.

4. *Retroactivity of SFR Investments*

Finally, the Bank argues that *SFR Investments* should not be applied retroactively. (ECF No. 30). The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC*

---

[4] Notably, the Bank makes no argument regarding fraud. *See* (ECF No. 28).

**James C. Mahan**
**U.S. District Judge**

- 12 -

1  *Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

### IV.    Conclusion

In sum, ACS's motion to dismiss will be denied because there is a possibility that this case may impact Ramirez's legal rights, including those regarding ACS. Moreover, the Bank's motion for summary judgment will be denied, and all of the Bank's claims will be dismissed, except for quiet title. *See* (ECF No. 1). Finally, the HOA's supplement (ECF No. 31)

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that ACS' motion to dismiss (ECF No. 25) be, and the same hereby is, DENIED.

IT IS FUTHER ORDERED that the Bank's motion for summary judgment (ECF No. 28) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that all of the Bank's claims, except for quiet title/declaratory judgment, (ECF No. 1) be, and the same hereby are, DISMISSED without prejudice.

IT IS FURTHER ORDERED that the HOA's supplement (ECF No. 31) be, and the same hereby is, STRICKEN.

DATED July 20, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**